Is everybody here on that case? I wonder if the attorneys who are going to orally argue step up and tell us who you are. Good morning, Your Honors. Jeffrey Stein on behalf of the Department of Appellants. Mr. Fitzgerald on behalf of the Department of Defendants. Very well. You each have 15 minutes to address the court. Mr. Stein, you can save out from your 15 minutes any portion you wish for a response. I think you can safely assume that we've read your briefs. That doesn't necessarily mean we understand them. This being a Mormon case, but we have read your briefs. That's very good to hear, Your Honor. I split it in half. We are here today to discuss Mormon and the Economic Loss Doctrine. And basically because the facts of this case are so egregious, that's why we're here, but also in a civil context after listening to the last case. This is a case where an individual, a non-professional, drew up plans to do an excavation on a house. We're only talking about two counts in this case, right? We are talking about... Two counts in the Sixth Amendment complaint. In the Sixth Amendment complaint. Both counts are addressed not to the culprit who drew the plans or to the guy who dug the excavation which caused the house to collapse. These counts are directed at the engineering firm and the representative of the engineering firm. That is correct. Those are the only two defendants that we're concerned about. Those are the only two defendants left. I will actually ask the court to take a look at the Wilfel and Watten conduct. Incidentally, you mentioned Wilfel and Watten all over your brief, but I don't see Wilfel and Watten in the complaint anymore. Well, it is in the Fourth Amendment complaint, Your Honor. It is? Yes. Once you plead over, of course, you've lost it. Absolutely, Your Honor. Waiver is a limitation on me. Oh, I see. Oh, I see what your argument is, is that since you had pleaded in the Fourth Amendment that it should carry over to the Sixth. That is part of my argument, Judge, because the other side has not been prejudiced on this. In fact, they even briefed their brief. They even responded to these arguments in their brief. They know about it. And waiver is a limitation upon the parties, not upon this court. This court can do substantial justice under the Supreme Court rules. An unbriefed issue has just snuck its way into the forest, hasn't it? I believe it has, Your Honor, and I'm asking this court to allow it to sneak in. Okay, all right. We'll maybe sort that out later. Go ahead. Okay, Your Honor. At this point, Your Honor, it is directed at two specific defendants, but it's an underlying scheme. This whole thing is they all, all these facts mesh together, where a, Mr. Muley is the, Nick Muley is the person who drew these plans. Tenor is that. Nick Muley drew the plans to actually regulate the manner and scope of the performance. Kubasa, or Kasuba, was not retained as an architect with regard to construction as such, but was retained simply as an architect to seal the plans drawn by Muley. Is that right? That is right. So that Kasuba's involvement in certifying those plans were not at least directly geared to providing plans for the actual performance of the construction. That's absolutely correct, and that's how it turned out.  So you, that would be at least your position as to what Kasuba did, so that you would then consider him to have made a negligent representation that is not geared to the product that the Supreme Court looks for in firemen. Thank you for the softball question. Well, there's a catch to that. You still would have to establish, would you not, that this was central to Kasuba's business, wouldn't you? Well, this is... Isn't that the requirement of Fireman's Fund? Because it has to be his business to make these representations, and not on a spotty basis of one particular case, but he would have to be the bean counter in the old Cordoza case from which all of this emanates. Well, I'm not sure that's entirely true, but in this case, he actually, this is his business. His business is to review plans instead of... Well, his is, have you pleaded that? Yes, I believe we have. I looked at those pleadings. I didn't find any allegations that this was central to Kasuba's business. I don't think that, even if it's not in the complaint, I don't think that's detrimental to the complaint at this point, because that's, this man is a structural engineer. His job is to review the plans if he's going to place a statement on them. Well, he's in the business of being a structural engineer. This may have been very incidental to his normal line of business, which is to give advice related directly to the construction. I don't see how placing his stamp on those plans. He can give advice, and that's fine, but he placed his stamp on the plans, and that shows to the world that he's... I mean, even assuming you've met the first prong of firemen's, have you pleaded the second prong? I believe we have, Your Honor. I believe we have, assuming he's a structural engineer. Neither your statement that you have nor my statement at this point is going to be dispositive. Okay. Right? Right. Tell us, where did you plead it? It's plain inherent in there, because we're calling him a structural engineer, which he is. This is a structural engineering company. This is their job. Their job is to review plans, and if they stamp them, they stamp them. That is part of their job. In this case, all he did was blindly put his stamp on those plans. If he had reviewed them, I certainly hope he would have found that there was no letter of assuring, and this house would have collapsed on itself, just the basic principles of structural engineering. It's obvious that he had not reviewed them. It's obvious that he admitted he had not reviewed them, and that's his job. His job is to place his stamp on them after reviewing them to make sure that they're proper. That is inherent within that company's business. It's inherent in the compliance of all the structural engineers. Actually, this exception also relates to the old case of Rosny v. Marnold, which was a contemporary of the Mormon case. That made an exception of those experts who are simply experts in certifying or representing or beam counting, so to speak. Okay. Your Honor, one of the other areas that we may actually have to look at is the other property issue in this. I mean, I think that's a significant issue where the damage caused to the existing structure was other property, not what was contracted for. Well, again, that is a question of what was bargained for, because ultimately that's where the Supreme Court arrives after a much give-and-take, you know, following Mormon and Anderson and the interim cases. It ultimately rejects its earlier positions that the suddenness of the impact could necessarily make an exception, even with a single product, into the intermediary position that the suddenness of the impact involving simply other property as such into the area. It has to, whether in determining whether it's other property or the same property, would not depend upon necessarily the nature of the items in that property, referring like the airframes versus the motor in the Pratt Whitney case, but would look to see what was bargained for. And I think what we have, we have two cases that illustrate that. The United case, a bargained-for roof was defective, caused water to seep into a ceiling, which collapsed, a sudden calamitous, it was considered sudden and calamitous. I don't even think that's an issue in this case. I think we all, everybody kind of agrees that it was a sudden and calamitous event, the collapsing of the house. Even if it's not, it hasn't been pled either way. Well, it meets both considerations in terms of it being sudden to the deterioration of the property, which is probably not central, although it can tangentially be central, into the fact that the event causing the damage was sudden and abrupt. Absolutely. And I think with the other property is really where the issue comes up. When the roof collapsed in the United case, this court said that it did substantial damage to the walls. And it also said furnishings and furniture. But it didn't go so far as to say the walls. These walls are part of the structure. And they called it other property. Well, your opponent would phrase the issue here as to what, whether the defendants bargained for the building of a basement or they bargained for the reconstruction of the house. And that's at least one focal point upon which the dispute leverages. Well, I think even my opponents think that this was a bargaining for a basement, an excavation for a basement, not a reconstruction of the house. Well, the question is whether that is a particularized area or whether this was hiring a contractor to redo the house. I think United is. And that's kind of a parallax, isn't it? It is a little bit, yes. With which eye you're looking. Well, I think United clearly says, the only difference is United is it's a roof instead of a basement. So one collapsed from the top down instead of the top collapsing to the bottom. United, this court went so far as to say the walls. The same part of the structure was damaged. It went that far. Also in the Myers case. Well, you have to really make a distinction between the crawlspace originally, right, and distinguish that from the house itself. Yes. And then say, well, what I really bargained for was an expansion of the crawlspace into a full basement. That is absolutely true. And I just assume naturally that the house would remain undisturbed and that's separate property. That would be your argument. Absolutely. I don't know whether the cases you rely on for other property are persuasive enough to include a house that falls into a hole. But, you know, it's an argument. I understand your position. I don't think it's a foreseeability issue at all. The bargain for a test does not look to see whether the damage would be foreseeable because if that were the case, we'd just rely on our old Hadley v. Baxendale and say it's all contract. And as long as the consequential damage is foreseeable, it's recovery and contract. That's not the test. The test is what are you hiring these people to do? And I think it's very clear. We're hiring them to do. Well, supposing you were hiring them to redo the siding. And damage the other side of the house? Yeah. The entire structure? Well, then that would be the entire structure. Whatever that damage would be, the entire structure. I mean, it depends on what the damage caused. What if you hired somebody to take out part of the wall and the bulldozer goes through the entire house? I mean, where do we draw the line? We're in the Mormon fog, aren't we? Well, I think I've been in the Mormon fog for a couple of weeks now. Can I move on to another issue that I think I would like to explore? You could be smart, Alec, and say, I don't know if you can, but you may. But I also know you can. I want to talk a little bit about this intentional misrepresentation and the echoes of fraud. Absolutely right. You seem to be a little schizophrenic in your pleading. I mean, your two counts that were dismissed, four and five, are headed negligence. That doesn't say anything about intentional misrepresentation. It just says negligence. Okay? Would you agree? I do agree. Yes. But then some of the language in your pleading would seem to indicate that you have more in mind than just negligence. Absolutely. As if you were kind of moving toward the elements that you need in order to establish an intentional misrepresentation and a fraud, which, of course, would take you out of Mormon, wouldn't it? Absolutely. Okay. So where can we tease out of these two counts enough language to say that you sustained your pleading, that you adequately pled an intentional misrepresentation or fraud count? If you look at the Fourth Amendment where the words intentional and willful wanton are laid in there, they're the exact same thing. No, no, no. I don't want to look at the Fourth Amendment complaint. The only complaint that's in front of us at the moment is the Sixth Amendment complaint. Those are the exact same facts. You haven't suggested to us that there are elements in your Fourth Amendment complaint that carry over and that you didn't, by pleading over, abandon them. That is correct, Judge. But there seems to be a little schizophrenia between your brief and what I read in the complaint. I understand. For example, you do say, let's take count five. You do say that he signed and sealed design drawings knowing, and you use the word knowing, that these were prepared by untrained, unlicensed, and unqualified whatever his name was, Nick. Okay? Yes. That seems like the beginning of an element, a false statement, okay? Known to be false, that would be your second element. To induce another to act, maybe. But then I have to read on, and finally when I get down to subparagraph M, you end up by saying, knowingly and intentionally violated the terms and provisions of the Structural Engineering Practice Act. That is correct, Your Honor. That is what's contained in the complaint. I believe those facts, whatever we call it, it's a label. The facts lay out exactly what is to be put, what is filed. So it would be your argument, I take it, that, and of course they're going to respond to this, and they have in their brief, and I'll save my other questions for them. They have in their brief. But would you, I think what you're suggesting to me is that whatever your other arguments might be, other property arguments. I understand, Judge. That's a separate and distinct argument from the intentional misrepresentation. Absolutely, Your Honor. That you've sufficiently pled intentional misrepresentation in counsel. That is my argument, Your Honor. You're going to stick to your guns on that? The one that's put in this. Okay. So it comes down to a question of whether when reading four and five, counts four and five, we can come to the conclusion that you adequately pled in those counts each of the five elements that you're required to plead to sustain a cause of active misrepresentation. I have some preliminary questions about that, if I might interpose. Sure. First of all, what was the relationship between Kasuba and the plaintiffs? Was there a privity relationship? There is no privity. They were third parties, weren't they? Yes. So that can cut both ways. First of all, as far as intentional misrepresentation, if it has to mimic fraud, you know, it won't. If there's no direct contact and no privity between your clients and Kasuba. The privity was between Miuli and Kasuba, and no one has raised third-party beneficiary echoes, nor do I necessarily see the likelihood of being able to do that. My next question, however, might be helpful to you. Thank you. What is the status of Mormon with regard to third parties who don't have privity with the plaintiffs? And has that even been briefed by either side? It has not been briefed by either side. However, there is an exception to Mormon. I mean, there is a third-party exception, and it's the architects. Well, is there? Yes. The Tolan case says, you know, in no time were architecture engineers, which are often third-party beneficiaries, automatically. I didn't see that exception. And even at that point on the trial, there was a different standard for analyzing a Mormon, an obvious Mormon case when we're talking about a third-party plaintiff. There are. Which you clearly are. I am in this for this count. As to these two defendants. As to these two defendants, right. The other Miuli's are not part of it. I mean, you're not claiming that there was any relationship at all between you and the engineer? Well, Judge, I'm not saying that. Depending on how this argument goes, our presiding justice might want to have some additional briefing. Wait a minute. I didn't say that. Well, maybe on the urging of one of his colleagues. Well, it could be. Anyway, the stamp itself, I believe, is the contact between the parties. And when they put that stamp on it, they declare to the world. You know, I see where you're coming from, Mr. Stein. I really do. I've read your brief. What I'm questioning is whether or not you adequately pled what you claim to be a cause of action for intentional misrepresentation. Third-party issue aside. What is in this? Whether that's enough. Whether you stated enough in those two counts to overcome a dismissal for lack of specific pleading. I mean, this is not a notice state. Absolutely not. Absolutely not. But these facts, we are fact-painting statement. These facts do lay out exactly what. Well, that would be a question. That's a question we have to review day and night. They don't lay out whether this is central to their business. And I think that's an essential element, probably, for which the plaintiff bears the burden of proof and consequently bears the burden of pleading. I believe that the facts laid out that are common to all the counts as well as the counts specific to these defendants do lay out the facts. I looked at your common counts, too, and there's a couple of them that clearly impact on the young man who actually computerized the plans. And one addressed to Michael and Nick about in order to avoid the cost of hiring a qualified design professional, they prepared, he prepared them on his personal computer. But they don't say, oh, here it is, paragraph 17 in the common count. Michael, therefore, arranged to have defendant Kasuba stamp the drawings prepared by Nick so that the village of Mount Prospect would believe that the design drawings had been prepared by an engineer. Now, that does strike me as the, you know, that's the hint of fraud or intentional misrepresentation. I looked at those provisions, and I was willing to speculate with the notion that by sealing, he incorporates the work of that contract, of that particular drafter, and that there develops a principal-agent relationship except as between the drafter and the architect who seals his work. Except that those provisions have, there's a separate provision in the act that specifically discounts that relationship by saying he could simply certify what somebody else does as somebody else. I don't, I'm paraphrasing those provisions. But he doesn't adopt the work. He simply certifies the competency of the drawings. But that certification comes with its certain duties that he has as the structural engineer, which he did not do, admittedly did not do, but by placing his stamp on that lies to everybody saying I did them. I reviewed these. Well, the question still evolves around the core issue whether Moorman applies in that context. If Moorman applies in that context, then we still probably would have to go back and see if it's with an eye towards a product or it's independent of an ultimate product. But if Moorman doesn't apply, then you may have a warranty action under the common law of tort rather than under the commercial code. Unless somebody could show me that that particular context of a stranger acting on behalf of one of the subs or one of the contractors can be sued under the commercial code by the ultimate owner of the premises for whom the construction takes place. No one, I mean, this is a barren area, gentlemen, in your submissions. It is, absolutely, Your Honor. But in this case, I mean, this isn't a case where a warranty or a contract could apply. This is an incomplete product. This was two days in. No one got to enjoy what they bargained for, the excavated basement. No one got to, there's no diminished expectations. This was a guy who stamped these plans and then they, which would allow the construction, allow the excavation of this property, and it caused a collapse upon itself. There is, if you look at the intent of what Moorman and the economic law doctrine is, it doesn't apply to a case like this. This is outrageous behavior. And I don't see why Moorman cannot apply to something. I mean, actually, your brief and your reply brief, in my judgment, at the moment anyway, do a better job of pleading intentional misrepresentation and fraud than your complaint does. That's part of the problem. When I look at your brief, I say, well, yeah, that's an interesting argument. And I look at the complaint and I'm saying, you know, this is kind of thin. And I can't rely on your brief to buttress your complaint. You can. You absolutely can. You have the power to. I don't think so. Our de novo review is of the complaint, not of your brief. Your cases obviously don't go all the way, because if they did, you wouldn't be here, gentlemen. You would have long ago shook hands on this case. When you say that you're at the Sixth Amendment complaint level, you have to realize that you've had some difficulty in shaping your cause of action. But the United Airlines case, which you seem to be echoing in, say, when you're talking about the leaky roof, involved damaged furniture, which was very much in the picture, as well as walls. The question is, how much attention do we pay to the walls as opposed to the furniture? Because I think if it damages furniture, then everything at that point is liberated from the baggage of Mormon, the walls included. Well, even if you take a look at the Mars case, the Mars case never expressed, expressing rules that if there was damage to other property, that is where a steel structure was, incomplete structure was damaged. And the company sought recovery for the actual damaged product. The court went so far as to say... But at that point, there were really two owners involved, at least according to the discussion in the court, plus the fact that that steel framework was not yet incorporated in the structure. Absolutely, Your Honor. So they were separate. So it wasn't simply damage to itself. Well, in that case, the court went so far as to say, you know, if this would damage some other property... Do you want to sum up? Because we really need to hear from Mr. Berglund. He's straining at the leash over there. I'm sure he's ready to... He's probably been living with this case for a long time, as you have, you know. And I'm sure it's been an interesting case for you both to live with. You will have an opportunity to respond. Absolutely, Your Honor. At that point, I will obviously let co-counsel... Very well. Mr. Berglund, you have our undivided attention. Provided I can ask you a question. Good morning, Your Honors. Rich Berglund. We have the defendant's counsel. May it please the Court. Justice Gordon. We have met before, haven't we, Mr. Berglund? Yes, we have. While you were functioning in this building, right? On the 16th floor. You do look familiar. Come to think of it. I'm happy that you remember me. Obviously. In fact, all I know from our past experiences is that you're capable of doing a good job. But that's all. Can I ask you a question about some language in your brief, which I consider to be central to the issue in this case? But that's only my thrust of the case. And it, again, has to do with this intentional false representation claim that they have made. You say, flat out, that since the dismissed complaint doesn't allege damages arising out of intentional false representations, i.e., fraud, that count is inapplicable. And you go on to point out the five elements that have to be pled, citing Richmond v. Blair. And that's an accurate statement of the law. And then, finally, you say, he has critically, he has failed to allege that when Kossub applied for the death penalty, he applied his seal and stamp to the design plans. He failed to allege that he knew the plans were inadequate. I think if you read, again, if you read paragraph 34, you can tease that out of paragraph 34. You can tease it out, but it's definitely not there. Well, purposely failed to determine whether they were sufficient. Again, you have to maybe, you have to read paragraph 34 carefully. But you basically say that there is nothing in this pleading that shows, at most, it shows incompetence, not intentional false representation. And yet you cite to no language other than the fact that you don't think paragraph 34 does it. And I was just curious as to whether you were relying on a careful reading of that or whether you were relying on something else that I didn't see in the complaint. Well, I guess my reading of the... I mean, if these, if you read the entire complaint, the run-up to the initial counts, and then counts four, five, and six, clearly there's an allegation that, although the allegation may not meet all of the five points that have to be met with respect to adequately pleading fraud, they do refer to a permit scheme that these people, they designed to at least misrepresent the situation to the village, okay, in order to avoid paying for what would have been considered to be adequate engineering drawings. Right. And that Kasuba knew that the drawings weren't adequate. And yet he signed off on them anyway. I don't believe the allegations show that he knew they were adequate. I believe that the allegations of the complaint show that he knew that they were prepared by somebody who was untrained. Then you don't think that's enough to say Kasuba was signing off on something he knew to be fraudulent? I don't believe so. I believe... Is his seal designed to state that the plans are adequate or that the drafter was qualified? Well, the Structural Engineering Act provides that a licensed structural engineer can look at any plans and apply his seal if he determines that those plans are adequate. Here there are no allegations. So that he doesn't attest to the qualification of the drafter but just to the qualification of the plans? Absolutely. And that's exactly what's alleged here. What's alleged is that he applied his seal and his stamp to some plans that he knew were drafted by somebody who was possibly... Do you think that if that were the dispositive issue in this case that we should base our decision on that omission from the pleadings? Or would you think that perhaps that's one of the circumstances that invokes the Rule 366, which permits us to engineer a just result, which may include some remand for the purposes of modifying the plea. I'm not just... We're not really just pulling... Yeah, we're not. No, I don't think you are. Because I need to feel that this case ultimately ends on that issue. Well, this is the Sixth Amendment complaint. So this is seven attempts... And that's a good point. ...to plead a cause of action. But however, I mean, we also have to liberally construe pleadings too, okay, to reach a just result. And it's clear that one of the things that he's citing too in his argument is that when they put their stamp on it and sent it to the village, that they have sufficiently reviewed the documents to ensure that they have met the standards of reasonable professional skill and diligence. Now, there are enough averments in his complaint to indicate that really Kasuba and Nick were in cahoots, and Kasuba knew that there was no way that Nick could ever meet reasonable professional skill and diligence standards. He wasn't an engineer. I think that's a very, very liberal construction. Well, perhaps it is. That's why I'm giving you an opportunity to respond to it. What you're basically saying is that no matter how imaginatively we look at the complaint, there's no way you can tease that out. As you said, Illinois is a fact-pleading state. It's not just a notice-pleading state. There has to be facts whether sufficient. I would suggest you read the Supreme Court decision in a case called, I think it's Russell v. Gieselin, where the court actually, I think it was Justice Freeman, mandated that even though the pleadings were inadequate, that the just result requires a remand. I happen to know about that case because I was the one reversed it. Oh, that's not good. I think you were right the first time. You can't forget in this case that there are two other defendants. I mean, it's not like the plaintiffs here left without remedy. There's another interesting issue here. Let's back up and peddle back to other property, the other property issue. Sure. We've got the cases out there, some of which say other property. We have a Supreme Court case that left us all dangling and said it is another property in this case. That's the aircraft case. But there could be another property case. So the Supreme Court has never precluded the possibility that you could succeed on another property argument. But they've left open the issue. In the case of the engine. Airlines. Right. Trans Airlines. You know, when you're reviewing a complaint to determine whether or not other property has been adequately pled, where do we go? Is that a question of law? That's my first question. Is this other property issue a question of law when it obviously is going to be determined on a case-by-case basis? At least counsel are dismissed pursuant to 2619. I know. Right. So we're really, as a question of law, we're deciding that this house in this particular circumstance is not other property. As a matter of law. You can definitely do that. I think it's safe to say. Well, I suppose we can, although I'm a little troubled by that. I have some problems in ascertaining how far Trans States stretches. Trans States postures a situation where you buy a motor from X and the fuselage and the rest of the body of the plane from Y. That is something goes wrong with the motor that destroys the plane. That Moorman will step out of that picture because what you bargain for is the sufficiency of the motor, not the sufficiency of the rest of the airplane. So that the airplane, as far as other than the motor, is other property and consequently within the Moorman exceptions. Okay. On the other hand, if the plane and the motor are joined together at some point by some middleman and then that middleman sells the entire plane to a customer, retailer or what have you. Then if something goes wrong with the motor which destroys the plane, Moorman, there is no exception to Moorman. It's considered the same property. Okay. Now, transposing that to our case. Someone hires somebody to build a basement. See, hiring them to rebuild the house. When the basement could be built without touching the rest of the house, even though there is some entry into the foundation, which is the fly-in disjointment that you're obviously going to cling to perhaps successfully. But if it doesn't involve going into the foundation, but involves simply digging underneath what is already a crawl space without impacting on the rest of the building. Right. It's one thing if you buy the house with the basement from a seller and something goes wrong with the basement that damages the house. Then you would be dealing with the same property rather than other property. Okay. But if you're buying the house and you're simply hiring somebody to service one area of the house that could be serviced without involving the rest of the house necessarily, why are we bound to say that it's a construction of the entire house that's involved? Generally, we have a problem, I suppose, tracing the trans-states case, which involves product to service. They don't necessarily lend themselves to a side-by-side comparison. Not in this case. And if you're servicing one part of the house and let's suppose you hire a contractor to fix your stove in your kitchen and he's careless and it burns the house. Let's assume that the stove is a fixture that is built into the wall like a pizza oven. Are you still going to say it's Mormon, it's the same property, rather than other property? Well, I'm not sure exactly what I would say in that case. But in this case, you have a crawl space. It's obviously part of a home. And if you look at the bargain for expectation, in this case, the plaintiffs were bargaining for a larger home. That's why they wanted to excavate. But you're dealing with a service, first of all. You're not dealing with a product. So it's not a clean-cut analogy to trans-states. I agree with you. And your service is limited to a specific component. Why should we apply the same test as we would apply when you buy the entire building from somebody? They're not buying the entire building from these contractors. They're buying a limited service room. Which is an expansion of their home. Stretch. Do you have a case that tells us that it's the exact same type of conceptualization? I would have included it in the brief if I did. There is no case. That was a rhetorical question. Because that much I could say from what I know of your past performance, I was certain that if it was there, you'd designate it. Thank you. I'm still, well, I was going to bring up another angle, another facet to this rather very interesting case in many respects. And that's the third-party problem. Because we keep talking about Mormon in the context of expectation of the bargain. And yet the particular defendants in these two counts had no relationship whatsoever with Mr. and Mrs. Matterson. None. They didn't know who these people were. They relied on Nick and his father. Totally. And there is no privity whatsoever or no expectations that they could have possibly insured against with respect to the behavior of the engineering firm and its agent in putting the stamp on these plans. How would they have insured against this kind of mischief? Where Nick goes to Kasuba, it is alleged, however inartfully, and says, look, I don't want to spend a lot of money on the plans for this thing. All we're going to do is dig out this crawl space and give them enough room for a basement. And I don't want to spend a lot of money on it. And besides, my buddy, my son Nick has been on the Internet, and he's found these plans. You'd probably charge me $5,000 or $6,000 for these plans. And my son Nick's done it for nothing. All I want you to do is stamp it. And Kasuba allegedly, even if inartfully pled, says, sounds okay to me. He stamps it in rubber. Right. Pursue it to his license. Okay. And they send it off to the village, and the village looks at it and says, well, it's got the stamp of an engineering firm on it. It must be okay. Go ahead. And two days later, the house falls into the cellar. Now, just from a purely 366 equitable point of view, you say to yourself, well, the matter's ought to have a cause of action against somebody for this mischief, if it's artfully pled. They have a cause of action for breach of contract against a codependent. Oh, yeah. Well, that's still pending, apparently, or whatever. But you think the engineering firm gets off clean. Well, sometimes plans are left without remedy. Or they're not pled in properly. Okay. Well, before products liability law developed, you had to have privity, and you had to bring an upstream action so that there were third-party pleadings ultimately joining. But those days are over. And the question is now whether Moorman takes that away in pure property damages. Or shields an engineering firm in this particular case, given this particular kind of behavior by the engineering firm. This is not the classical engineering firm Moorman case, where they're off the hook because of the case law indicating, you know, that the plans are incorporated into the final product. It's not that kind of a case at all. I was trying to wedge it into our current Moorman cases, and I can't find a place to put it. Right. Because there really is not a good Moorman case as of right now. Possibly this could be it directly on point. Let's deal with one other facet, if we might, for a moment. Sure. At any rate, though, how do we get past firemen? And insofar as it distinguishes between representations that are product-directed versus representations that are representations in their own right. You try to get past it in your brief by saying, since the whole purpose of getting the permit was to be able to build, therefore this particular representation was ultimately what was ancillary to or vice versa. The product was substantially ancillary to that effort, so that we don't have a representation simply for the purpose of giving guidance but for producing product. It seems to me that you have a hurdle, albeit you adeptly try to sidestep it by saying you look to the ultimate purpose  These architects were there for only one reason. They were not hired to build. They were not retained to develop plans for building. They were retained to certify to the county agency. Why isn't that simply a representation guiding the business? I do not believe it is because, as you stated earlier, the end product is this. But it's not their end product. They weren't on the scene for anything but one segment, which was to certify the plans to the county. But they reviewed those plans. They applied their standards. But they weren't telling the contractor, use these plans to build. They were telling the county, issue a permit, because they weren't hired to advise the contractor on how to build. They were only hired to get past the zoning agency. Well, if you want to look at it in that respect. Yeah. That's how Mr. Stein would like us to look at it. However inarticulately fled the entire complaint, there is a hint of that going on, isn't there? This case is a parallax. You look through one eye, it's one way. The other eye, it's another way. You want to sum up? Because we really need to move along. We have one more case this morning. Sure. Your Honors, we're here following the dismissal of counts four and five of the plaintiff's sixth amended complaint. Plaintiffs had ample opportunity to sufficiently flee the cause of action, but they have failed to do so, as you've noted. Your stress is actually on the language of the two counts of the complaint, that they just don't say what he claims they say they say. Absolutely, and even if you look at the facts, the deposition testimony, there are insufficient allegations. You do admit there is a possibility that, properly pled, there could be a cause of action for fraud that would take it out from underneath Moorman. Were it properly pled? If it were properly pled, I believe it would remove it from Moorman. Well, but it can't be properly pled to constitute an intentional misrepresentation, since they were not representing anything to the plaintiff. The plaintiffs. Right. It was to third parties, with whom there is no, about whom there is no assertion of privity. I agree. Thank you. Thank you, counsel. Mr. Stein, you get the final brief word. Thank you. Oh, by all means, yeah. Whatever you want to do. I'll let you articulate it when Mr. Stein is summed up. Your Honors, I just want to briefly say that this Court has, in the past, exercised its responsibility for a just and the maintenance of a sound and uniform body of precedence in a reviewing court. This Court has considered issues not properly preserved. We have even something that this Court is not even going so far as to say is not properly preserved. Incidentally, I hope you're not disturbed at some friendly banter with one of your opposing counsel. Your Honor, absolutely not. Obviously, it's not going to make any difference. You'll feed off on both of us equally, I think. Your Honors, I think this Court has the power to do substantial justice in this case. That's just the one element of this. I still think under the other property portion of this, as well as the fact that my clients could not have protected themselves under a warranty or under a contract for the damage that was caused to the existing structure of the house, which is other property, this case should be remanded. This case should be remanded either for amendment to the pleadings or for further proceedings. With that, Your Honors, I believe you probably have some further direction for me. Yes. The briefs and argument were obviously very helpful, but I think there is an area that could use some additional input from both sides, and that is to deal with this third-party issue. Why don't we talk about seven days, seven days, and seven days? I presume you would prefer that to simultaneous submission. I'm fine with that. Absolutely. It would be more helpful. Are you going to put a page limitation on these? Yes. How about five pages? That helps everybody. That would be great. And that's to directly address the third-party beneficiary? Yes. Right. Question. If there is one. You may conclude after reviewing all of the… That there isn't one. That there isn't one. Okay, Your Honors. Thank you very much. The clock begins to run. Today is the 13th. It's a Thursday. We'll tell you what. We'll give you the weekend. The clock begins to run on Monday, the 15th. Gentlemen, obviously, in instances where a case is being oraled, it would be appreciated for the parties not to solicit extensions. I've been with this case long enough, Your Honors. We'll start the clock running on the 17th. Thank you.